EXHIBIT 2

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN BERNARDINO

THE PEOPLE OF THE STATE OF CALIFORNIA,
                                        Plaintiff

                        v.



LAWRENCE BIRKS,
   aka EARL WASHINGTON
                                        Defendant(s)

Case No.

I N F O R M A T I O N

Arraignment Date: 12/15/
Department: CEN 9

I N F O R M A T I O N
S U M M A R Y

| Ct. No. | Charge | Charge Range | Defendant | Special Allegation | Alle Effe |
|---------|--------|--------------|-----------|--------------------|-----------|
| 1 | PC459 | 16-2-3 | BIRKS, LAWRENCE | PC667(b)\(i) | Chec |
|   |       |        |                 | PC667(b)\(i) | Chec |
|   |       |        |                 | PC667.5(b) | +1 |
|   |       |        |                 | PC667.5(b) | +1 |

60 DAYS      2/13

TRIAL        1/30

A/C          1/27

P/T MOTIONS  1/13

D'S P & A'S   1/3

π'S D & A'S   1/9

FSB 05628 BIRKS, LAWRENCE                    -7-                    March 15, 1995

RESTITUTION FINE:                           It is therefore respectfully
recommended that the defendant, Lawrence Birks, be ordered to pay a restitution
fine in the amount of $1,500.00 for the offense of Second Degree Commercial
Burglary, a Felony, Count I.

PROBATION OFFICER'S RECOMMENDATION:          It is therefore respectfully
recommended that probation be denied and the defendant, Lawrence Birks, be
sentenced to the California State Prison as follows:

COUNT I:            Second Degree Commercial Burglary -
                    in violation of Section 459 PC, for
                    the aggravated term of                              3 years

COUNT II:           To be concurrent to above;
                    Second Degree Commercial Burglary -
                    in violation of Section 459 PC,
                    Misdemeanor, (in County Jail) for                   1 year

                    To be consecutive to above;
                    Enhancement of "Prior Prison Term,
                    PC 667.(b), found true                              1 year

                                    Pursuant to PC 667(3)(ii), the
commitment to State Prison is for a total of twenty-five (25) years to LIFE, with
credit for time served, a matter of ~~two~~ *three* hundred ~~fifty-four~~ *thirty-six (336)* ~~(254)~~ days (~~one~~ *two*
*twenty four (324)*
hundred ~~sixty-nine (169)~~ *one hundred twelve (112)* days actual, ~~eighty-five (85)~~ days conduct), and may be
followed by parole for a period of three (3) to four (4) years.

21

*FYI*

```
****************    TRIAL COURTS CASE LIST    ***********************************
OPEN DATE: 10/06/94

                                    ┌─────────────────────────┐
                                    │ CASE NUMBER : MSB11281   │
                                    └─────────────────────────┘

LAST NAME  : BIRKS            MIDDLE: NMN
FIRST NAME : LAWRENCE         D.O.B.: 08/04/55
                             ─────── * CASE INFORMATION * ───────

FELONY/MISDEMEANOR : MISDEMEANOR        CASE STATUS : CLOSED
                                        CLOSE DATE  : 10/18/94
CHARGES       459(2ND) PC

DISPOSITION   DISMISSED


CODE      : 4                APPT CODE: M/1              COURT: SBMC
ATTORNEY  : JGS              EARLY DISPO: SB            DEPT : 8

CO-DEFENDANT INFO  N/A


COURT APPEARANCES: 3         STRIKES: 0
NO OF TRIAL DAYS: 0          TYPE OF CONFLICT: 1
```

RECEIVED
MAY 0 8 1995
Superior Court
County Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES     **DEPT.** 101

May 29, 1987

RABLE: **KATHLEEN PARKER**
J. TKACH

JUDGE
Deputy Sheriff

R. RICH
K. PARKER-RIJKE

Deputy Clerk
Reporter

A796849                    (Parties and counsel checked if present)

PEOPLE OF THE STATE OF CALIFORNIA
VS

01 WASHINGTON, EARL
211  1 ct.

Counsel for People:
DEPUTY DISTRICT ATTY:   W. SATO

Counsel for Defendant: F. PETERS  987.2

NATURE OF PROCEEDINGS

JURY TRIAL          REM                    3-10-87

Proceedings resume from May 28, 1987, with the defendant present
in open Court, each counsel also present.

At 10:28 A.M., the jury returns into open Court.  The jury foreman
hands the envelope containing the sealed verdicts to the bailiff,
who hands said envelope to the Court.  The Judge personally unseals
the verdicts (ordered sealed the evening of May 28, 1987).  Verdict
is as follows:

"TITLE OF COURT AND CAUSE
We, the Jury in the above-entitled action, find the Defendant EARL
WASHINGTON guilty of the crime of ATTEMPTED ROBBERY, in violation of
Section 664/211 Penal Code, a felony, a lesser but necessarily included
offense within that charged in the Information.
This 28 day of May, 1987, James Mahan, Foreman"

Verdict is read by the Clerk.  At request of counsel for the
defendant, the jury is polled and each juror answers "Yes".  Verdict
is ordered recorded; re-reading of the verdict as recorded is waived.
The jury is thanked and discharged.

MATTER IS REFERRED TO THE PROBATION DEPARTMENT.  Probation and
sentencing hearing is set for June 19, 1987 at 10:00 A.M. in this
department.

All verdicts forms submitted to the jury (each defendant) and jury
instructions given (none refused), plus all question forms from the
jury are filed.  Also, the envelope in which the verdict forms were
sealed overnight is filed.

REMANDED

23

MINUTES ENTERED

~~125~~

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

FILED San Bernardino District
San Bernardino County Clerk

FEB 15 1995

(for filing stamp only)

By *Earl A. Anderson* Deputy

THE PEOPLE OF THE STATE OF
CALIFORNIA,

                 Plaintiff,

        vs.

LAWRENCE BIRKS, aka,
EARL WASHINGTON
                 Defendant.

CASE NO. FSB 05628

V E R D I C T

THIRD ALLEGATION
AS TO COUNT ~~TWO~~ ONE

We, the jury in the above entitled action, find the allegation that said defendant, LAWRENCE BIRKS, was on and about the 19th day of June, 1987, in the Superior Court of the State of California, for the County of Los Angeles, Case # A796849, convicted of the crime of ATTEMPTED ROBBERY, a felony, in violation of Section 664/211 of the Penal Code, and that he then served a term as described in Penal Code Section 667.5 for said offense, and that he did not remain free of prison custody for, and did commit an offense resulting in a felony conviction during, a period of five years subsequent to the conclusion of said term, within the meaning of Penal Code Section 667.5(b) to be:

      [X]   TRUE

      [ ]   NOT TRUE

      (Check the applicable box)

Dated: 02-15-95

_____
Foreperson

24

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

F I L E D

JOSEPH A. LANE, Clerk

J. BELCHER
Deputy Clerk

|  |  |
|---|---|
| In re | B151837 |
| EARL WASHINGTON | (Super. Ct. No. A796849) |
| on | (William R. Pounders, Judge) |
| Habeas Corpus. | **O R D E R** |

THE COURT:

The court has read and considered the petition for writ of habeas corpus, filed July 27, 2001.  The petition is denied.  Petitioner is procedurally defaulted from challenging the sufficiency of the evidence or the competence of counsel at his 1987 attempted robbery trial due to his unexplained delay in seeking relief.  (*In re Clark* (1993) 5 Cal.4th 750, 783.)


---
TURNER, P.J.          GRIGNON, J.          WILLHITE, J.*

*  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.



1    IN THE MUNICIPAL COURT OF LOS ANGELES JUDICIAL DISTRICT

2        COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

3    HON.   JON M. MAYEDA, JUDGE                    DIVISION NO. 43

4

5    THE PEOPLE OF THE STATE OF CALIFORNIA,

6                          PLAINTIFF

7            - VS -

8                                              NO.    A796849

9

10   EARL WASHINGTON, FRANCISCO ROSA,
     and HENRY OLIVER,

11   _____
                          DEFENDANTS

12

13              REPORTER'S TRANSCRIPT

14           Wednesday, March 4, 1987

15

16   APPEARANCES:

17     FOR THE PEOPLE              MR. WAYNE SATO
                                   DEPUTY DISTRICT ATTORNEY
18

19

20     FOR THE DEFENDANT          MISS MARCIA BREWER
       EARL WASHINGTON—           ALTERNATE DEFENSE COUNSEL
21

22

23     FOR THE DEFENDANT          MR. STUART GLOVIN
       FRANCISCO ROSA             DEPUTY PUBLIC DEFENDER

24

25     FOR THE DEFENDANT          MR. WILLIAM LORDEN
       HENRY OLIVER               ALTERNATE DEFENSE COUNSEL
26
                        **FILED**
27   HTA:  March 19, 1987                    CAROLE S. MOORE
                        MAR 12 1987  +4       OFFICIAL REPORTER
28   DEPT. 134                               C.S.R. NO.   3218

     FRANK S. ZOLIN, COUNTY CLERK

     ORIGINAL    BY  D. Dance    DEPUTY            25

2

I N D E X

| PEOPLE'S WITNESS | DIRECT | CROSS |
|---|---|---|
| FRIZZELL, Stephen | 4 | 10 (B) |
| | | 12 (G) |
| | | 13 (L) |

E X H I B I T S

(None)

26

3

1    LOS ANGELES, CALIFORNIA; WEDNESDAY, MARCH 4, 1987; 11:53 A.M.

2

3                              -o0o-

4

5        THE COURT:  People versus Earl Washington, Francisco

6    Rosa, and Henry Oliver, Case No. A796849.

7            Each defendant is present in court.  Mr. Washington

8    is represented by Miss Brewer; Mr. Rosa is represented by

9    Stuart Glovin, Deputy Public Defender; and William Lorden,

10   A.D.C., represents Henry Oliver.

11           Is Earl Washington your true name?

12       DEFENDANT WASHINGTON:  Yes, sir.

13       THE COURT:  Is Francisco Rosa your true name?

14       DEFENDANT ROSA:  Yes.

15       THE COURT:  And Henry Oliver, is that your true name?

16       DEFENDANT OLIVER:  Yes.

17       THE COURT: Thank you.

18           Counsel each waive reading of the Complaint and

19   advisement of rights?

20       MR. GLOVIN:  Yes.

21       MR. LORDEN:  Yes.

22       MISS BREWER:  So waived on Mr. Washington's behalf.

23       THE COURT:  Mr. Sato.

24       MR. SATO:  Officer Frizzell, please.

25       THE CLERK:  Please raise your right hand.

26           You do solemnly swear that the testimony you are

27   about to give in the cause now pending before this Court shall

28   be the truth, the whole truth and nothing but the truth, so

4

1    help you God?

2        THE WITNESS:  I do.

3        THE CLERK:  Please be seated.

4        MR. GLOVIN:  Motion to exclude.

5        MISS BREWER:  Join in that motion, your Honor.

6        THE COURT:  If there are any other actual or potential

7    witnesses in this case in the courtroom, you are ordered

8    outside.

9

10                    STEPHEN FRIZZELL,

11    called as a witness on behalf of the People, having been duly

12    sworn, was examined and testified as follows:

13

14        THE CLERK:  Please state your name, spelling your first

15    and your last name.

16        THE WITNESS:  Stephen Frizzell, S-t-e-p-h-e-n,

17    F-r-i-z-z-e-l-l.

18        THE CLERK:  Thank you.

19

20                    DIRECT EXAMINATION

21    BY MR. SATO:

22        Q    Are you a police officer for the City of Los

23    Angeles?

24        A    Yes, I am.

25        Q    Were you on duty on February 17, 1987, around

26    1820 hours?

27        A    Yes, I was.

28        Q    On that date and time, were you near 450 South Main

5

1    Street in the City and County of Los Angeles?

2        A    Yes, I was.

3        Q    Did you see any individuals at that location that

4    attracted your attention?

5        A    Yes, I did.

6        Q    How many people did you see?

7        A    Three.

8        Q    Were they together when you first saw them?

9        A    Yes.

10       MR. LORDEN:  Object to that.  That's a conclusion of the

11   witness.

12       MR. GLOVIN:  Join.

13       THE COURT:  The answer "yes," is stricken.

14   BY MR. SATO:

15       Q    I guess what I meant was were they standing close

16   to each other or not?

17       A    Yes.

18       Q    Was anyone else around them at that time?

19       A    There were other people standing in the proximity,

20   but they were farther away.  They were in front of a liquor

21   store, so there was a lot of traffic.

22       Q    About that time, did another individual approach

23   the three individuals?

24       A    Yes, he did.

25       Q    Can you describe that individual, please.

26       A    Male Caucasian.  I believe he's about 74 years old,

27   something like that.

28       MR. GLOVIN:  Objection.

29

6

1    THE COURT:  Your objection?

2    MR. GLOVIN:  Speculation on the part of the witness as

3 to his age.

4    THE COURT:  Sustained.  Age is stricken.

5 BY MR. SATO:

6    Q    Did something unusual happen to that male

7 Caucasian individual?

8    A    Yes.

9    Q    What was that?

10    A    Mr. Washington approached the old man as he walked

11 down the street, at which time he put his arm around him as if

12 greeting a life-long friend and turned him towards the group

13 and walked him to the other two guys that were standing with

14 him.

15    Q    Is Mr. Washington here in court?

16    A    Yes.  He's the gentleman on our left, the taller

17 of the three.

18    THE COURT:  Indicating Defendant Washington for the

19 record.

20 BY MR. SATO:

21    Q    What happened as Defendant Washington and this

22 other individual got near the other two?

23    A    As they neared the other two, the middle gentleman,

24 the shorter, stouter of the three, proceeded to put a chokehold

25 on the male Caucasian.

26    Q    By "person," who do you mean by that?

27    A    Defendant Rosa in the middle.

28    THE COURT:  Indicating Defendant Rosa for the record.

1    BY MR. SATO:

2       Q    What happened next?

3       A    And then the other gentleman to his right -- our

4    right, I should say -- Mr. Oliver -- then all three of them

5    began to close in on the male Caucasian.

6       THE COURT:  Let's indicate for the record that Defendant

7    Oliver has been identified.

8       THE WITNESS:  I observed them to be reaching toward the

9    area of the male Caucasian's pockets, and at that time an

10    RTD bus came by and obstructed my view for about two- to

11    three seconds.

12    BY MR. SATO:

13       Q    What did you next observe?

14       A    Next I observed the old man to be released as the

15    bus passed and pushed away from the group and kind of spun

16    around and fall to the ground.  I was watching the three

17    people, these gentlemen here, and I looked to my right.

18    Traffic was very congested there with about two or three cars

19    sitting there and pointing.

20       MR. GLOVIN:  Objection to what they were saying.

21       THE COURT:  Well, overruled.  There was no statement.

22       THE WITNESS:  No statement.  They were just indicating

23    with their fingers, pointing towards the group, and they waited.

24    At that time, I pulled my black-and-white vehicle across

25    traffic, across Main Street, stopped at the east curbing,

26    exited the car.

27    BY MR. SATO:

28       Q    Were the three individuals, the three defendants,

36

8

1    detained at that point in time?

2        A     Yes, they were.

3        Q     Was there anything at or about the location where

4    they were being detained that you noticed?

5        A     I noticed change, a dollar twenty-five in change,

6    a room key, a coupon book from Santa Anita Race Track, and a

7    packet of books.

8        Q     Where were those items?

9        A     Scattered on the ground.

10       Q     Were they near the defendants?

11       A     Where they had been at the time of the robbery,

12   yes.

13       Q     Did you also talk to this male Caucasian, without

14   telling us what he said, if he said anything?

15       A     Yes.

16       Q     Was there anything unusual about his person when

17   you talked to him?

18       A     I observed his pockets to be pulled inside out.

19   He was laying on his back where he had been pushed approxi-

20   mately 20, 30 feet away south of the location.

21       MR. GLOVIN:  Objection to "pushed."  No foundation.

22       THE COURT:  Perhaps you should lay the foundation.

23       MR. SATO:  I believe the witness testified that he saw

24   him being pushed, but I'll ask the question.

25       Q     Did you see the male Caucasian, other than what

26   you said --

27             Did you see something happen to him or how he got

28   at the location?

9

1    A    Yes, I did.

2    Q    How did that happen?

3    A    As the bus pulled away from the location, it just

4  kind of passed momentarily; and as it left and my view became

5  of the three defendants again, I saw them push the old guy,

6  the male Caucasian, away, and he spun around and fell to the

7  ground on his back.

8    MR. SATO:  Thank you.

9    I have nothing else.

10    THE COURT:  I would assume there is going to be cross.

11    MISS BREWER:  Just briefly.

12    THE COURT:  We're going to stop now.

13    MR. LORDEN:  Might I advise this Court that I'm ordered

14  to Department 121 at 1:30 for a plea.  If we could come back

15  at 1:45, I'd appreciate it.

16    MR. SATO:  I have no objection if the defendants will

17  waive continuous prelim.

18    MR. LORDEN:  Well, I think, your Honor, perhaps -- I

19  understand the problem.  Perhaps I'll just come here first and

20  see if we can finish.

21    THE COURT:  Thank you.

22    The Court is in recess until 1:30.  We'll finish

23  the prelim at that time.

24    (Lunch recess.)

25

26

27

28

39

10

1    LOS ANGELES, CALIFORNIA; WEDNESDAY; MARCH 4, 1987; 1:41 P.M.

2

3                              -o0o-

4

5        THE COURT:  Court again is in session on the Washington,

6    Rosa, and Oliver case.  They are each present in Court with

7    their attorneys.

8            You may retake your seat on the stand.

9        THE WITNESS:  Thank you.

10       THE COURT:  We need to wait a moment for Mr. Lorden.

11           Mr. Sato, are you finished with your examination?

12       MR. SATO:  Yes.

13       THE COURT:  Miss Brewer.

14

15                       STEPHEN FRIZZELL,

16   called as a witness on behalf of the People, having been

17   previously duly sworn, resumed the stand and testified further

18   as follows:

19

20                       CROSS-EXAMINATION

21   BY MISS BREWER:

22       Q    Where was Mr. Washington when you first observed

23   him that day?

24       A    Standing in front of the liquor store at 450 South

25   Main Street.

26       Q    Was he standing by himself or with someone else?

27       THE COURT:  With some individuals.

28   ///

11

BY MISS BREWER:

    Q    How close was he to these individuals?

    A    Two-, three feet. They were talking, partying.

    Q    There was more than two-, three people in this group?

    A    There were others walking to-and-fro and walking out of the liquor store.  When I first started watching them, there were three together.

    Q    Did you see Mr. Washington have anything in his hands when you first saw him?

    A    When I first saw him, no.

    Q    Did you observe him to have something in his hands at a later time?

    A    Yes.

    Q    When was that?

    A    As he walked away.

    Q    When he walked away, this was after the robbery had occurred?

    A    Yes.

    Q    When he walked away, did he walk with anybody or was he alone?

    A    Well, he was, I think, with Defendant 3.  I'm not sure.  They split up.  One went south; one went north.  I'd have to check my report.

    Q    Did you actually detain him?

    A    At that time?

    Q    Yes.

    A    Yes.

35

12

1      Q    Did you notice if he had anything in his hands at

2  that time?

3      A    A bottle in the bag.

4      Q    A bottle?

5      A    A bag with a bottle inside of it.

6      Q    How many people were arrested that day?

7      A    Three.

8  MISS BREWER:  I have nothing further.

9  THE COURT:  Mr. Glovin.

10

11                CROSS-EXAMINATION

12  BY MR. GLOVIN:

13      Q    Sir, you have indicated that two of the

14  individuals went south and one went north.  In your report, did

15  you indicate it was Mr. Rosa who went in the northerly

16  direction?

17      A    I don't recall.  It should be in the report, though,

18  if you want to read it.

19      Q    Have you had an opportunity to review the report?

20  Would that refresh your recollection?

21      A    Sure.

22  MR. GLOVIN:  Your Honor, if I might approach the witness.

23  THE COURT:  Yes.

24  BY MR. GLOVIN:

25      Q    Officer, have you had an opportunity to review the

26  report?

27      A    Yes.

28      Q    Would I be correct in saying that Mr. Rosa went

36

1    north alone; is that correct?

2        A     You would be correct, yes.

3        MR. GLOVIN:  Thank you.

4           I have nothing further.

5

6                  CROSS-EXAMINATION

7    BY MR. LORDEN:

8        Q     Sir, do you know what property was lost by the

9    victim?

10        A     Roughly, yes.

11        Q     What property was that, sir?

12        A     Well, he identified to me --

13        Q     Excuse me.  Of your own knowledge, without anything

14    told you, do you know of any property that he lost?

15        A     Do I know what was taken from him?

16        Q     Yes.

17        A     From what he identified to me, yes.

18        Q     Other than from what he told you, did you see

19    anybody take some property from him?

20        A     I saw the actions.  I did not see the actual

21    taking from his pockets.  I saw the hands reaching into his

22    pocket area, and then the bus came by as I said before.

23        Q     Let me ask the question again, sir:  did you see

24    anybody take some property from the victim?

25        A     No, I didn't.

26        Q     All right.

27           Did you find any property that purported to belong

28    to the victim on Mr. Oliver?

37

14

1        THE WITNESS:  Your Honor -- basically, no.  I said I

2   didn't know what was taken from the victim.  I did find money

3   crumpled up in one of the defendants' --

4   BY MR. LORDEN:

5        Q    You didn't find money belonging to the victim?

6        A    There was no name on it.  I couldn't identify it.

7        Q    Did the victim appear to be intoxicated?

8        A    Yes, he did.

9        Q    Seemed to be staggering and unsteady on his feet?

10       A    Yes.

11       Q    When you spoke about him being pushed, do you know

12   whether he was pushed or whether he fell because of his

13   condition?

14       A    When he fell?  When I saw him fall to the ground?

15       Q    Yes.

16       A    I say he was pushed.

17       Q    Who did you see push him?

18       A    Mr. Rosa, and he had a choke hold on him and

19   released him when they saw us.

20       MR. GLOVIN:  Objection to "when they saw us."

21       THE COURT:  That portion is stricken.

22   BY MR. LORDEN:

23       Q    Would you describe the conduct of Mr. Oliver when

24   you came upon that scene?

25       A    I saw him standing next to the wall kind of in the

26   back of the group.  There was a doorway to a liquor store.

27   Just south of that  is where the defendants were standing.

28   Mr. Oliver was initially here, next to the door; the other two

38

1   defendants were against the wall and alongside of him, this

2   way.  Mr. Washington reached back and pushed him towards the

3   group.  Mr. Rosa began to choke him, and then they started to

4   rob him.

5       MR. GLOVIN:  Objection.

6       THE COURT:  What is your objection?

7       MR. GLOVIN:  It's a non-robbery.

8       THE COURT:  Sustained.  That portion of the answer is

9   stricken.

10  BY MR. LORDEN:

11      Q    Sir, you told us about what Mr. Washington and

12  Mr. Rosa did.  Let me ask you again:  what conduct did you

13  observe Mr. Oliver to be doing when you came on the scene?

14      A    Step up into the group and joining in on the

15  theft, robbery, of the victim.

16      MR. GLOVIN:  I'd ask the phrase "robbery" be stricken.

17      THE COURT:  All right.  Sustained.  The phrase "robbery"

18  is stricken.

19      MR. GLOVIN:  Thank you.

20  BY MR. LORDEN:

21      Q    What, if anything, did he do to the victim?

22      A    I didn't see him put his hands in his pockets if

23  that's what you mean, no.  I saw him step up to the group --

24  the three men in the group with the victim in between them,

25  like a sandwiched-type robbery -- type crime.  As the bus came,

26  it blocked my view.  I didn't see anybody take anything from

27  his pockets.

28      Q    So if I understand your testimony, you saw

39

16

1   Mr. Oliver standing against the wall; he stepped forward, the

2   victim fell down at some point, and you never saw Mr. Oliver

3   take any money from the victim; is that right?

4       A    No.  That's not right.

5       Q    You didn't see him take any other property?

6       A    I didn't see anybody take any property from him.

7   MR. LORDEN:  Nothing further, sir.

8   THE COURT:  Mr. Sato?

9   MR. SATO:  No further questions.

10  THE COURT:  Thank you.  You may step down.

11  MR. SATO:  People rest.

12  THE COURT:  Miss Brewer?

13  MISS BREWER:  No affirmative defense at this time.  I

14  would make a motion to dismiss for failure to prove the

15  elements of a robbery in that there was taking from this

16  individual by means of force or fear, because there has been

17  no testimony that anything has been taken from this individual.

18      The testimony was there were some items on the

19  ground after this group had been around the individual.

20  MR. LORDEN:  I would join in that motion, your Honor.

21  There is nothing to show a robbery has taken place.

22  MR. GLOVIN:  I would join in that motion.  I will not

23  be presenting any affirmative defense.  Join in the arguments

24  as submitted by co-counsel.

25      There was no showing there was a robbery committed.

26  THE COURT:  Mr. Sato?

27  MR. SATO:  People submit that there is at least an

28  attempted robbery and there is circumstantial evidence that

17

1   there was an actual robbery.

2           The victim was being held by one of these

3   individuals.  They were going through his pockets.  There was

4   money and other items found on the ground nearby where they

5   were, and the victim's pockets were pulled out of his pants.

6   I think that's some circumstantial evidence.

7       THE COURT:  Thank you.  I believe there is enough

8   circumstantial evidence to hold the defendants to answer to

9   an attempt.

10          I would agree that there is not enough evidence to

11  show there was an actual robbery that took place.

12          The Court holds the defendants to answer to the

13  charge of 664/211 of the Penal Code, a felony.

14          Further proceedings for each defendant, March 19,

15  1987, 8:30 a.m., Department 134.

16          That will be the order.

17

18          (At 1:53 p.m., the proceedings

19           were concluded.)

20

21

22

23

24

25

26

27

28

41

IN THE MUNICIPAL COURT OF LOS ANGELES JUDICIAL DISTRICT

COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

HON. JON M. MAYEDA, JUDGE                    DIVISION NO. 43

THE PEOPLE OF THE STATE OF CALIFORNIA, )
                                       )
                        PLAINTIFF, )    NO. A796849
                                       )
            -VS-                        )
                                       )
EARL WASHINGTON, FRANCISCO ROSA,       )
and HENRY OLIVER,                      )
                        DEFENDANTS. )
───────────────────────────────────────

        I HEREBY CERTIFY THAT ON THE 4th DAY OF MARCH    ,
19 87,    CAROLE S. MOORE        , C.S.R., OFFICIAL REPORTER OF
THE ABOVE ENTITLED COURT, WAS ASSIGNED AS SHORTHAND
REPORTER TO REPORT THE TESTIMONY AND PROCEEDINGS CONTAINED
HEREIN AND DID ACT AS SUCH REPORTER AND WAS BY ME DIRECTED
TO REDUCE THE SAID SHORTHAND NOTES TO TYPEWRITING.


                        JUDGE OF THE MUNICIPAL COURT OF
                        LOS ANGELES JUDICIAL DISTRICT,
                        COUNTY OF LOS ANGELES, STATE OF
                        CALIFORNIA


        I HEREBY CERTIFY THAT I AM AN OFFICIAL SHORTHAND
REPORTER OF THE ABOVE ENTITLED COURT; THAT PURSUANT TO THE
JUDGE'S CERTIFICATE ABOVE I WAS ASSIGNED TO REPORT AND DID
CORRECTLY REPORT THE TESTIMONY AND PROCEEDINGS CONTAINED
HEREIN; THAT THE FOREGOING IS A TRUE AND CORRECT
TRANSCRIPTION OF MY SAID NOTES AND A FULL, TRUE AND CORRECT
STATEMENT OF SAID TESTIMONY AND PROCEEDINGS.


                                              3218
            OFFICIAL REPORTER, C.S.R. NO.

42

# DISPOSITION OF ARREST AND COURT ACTION

| BOOKING NO. | U.O. | LOC. BKD. | | LIC. NO. | | STATE | MT |
|---|---|---|---|---|---|---|---|
| 8973792 | | | | | | | |

**RELEASE** DATE FROM / DISP. DATE

**DR** 87-01-07587

**CII** M00867409
A08941308

| ARRESTEE'S LAST NAME | FIRST | MIDDLE | SUP. |
|---|---|---|---|
| WASHINGTON | EARL | | |

| ADDRESS | APT. NO. |
|---|---|
| 4319 8TH AV | |

| CITY | STATE | CA |
|---|---|---|
| LA | | |

| SEX | DESCENT | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE | AGE |
|---|---|---|---|---|---|---|---|
| M | B | BLK | BRO | 600 | 205 | 080453 | 33 |

| VEH. LIC. NO. | STATE | R.O. | AKA: LAST - FIRST - OR NICKNAME |
|---|---|---|---|
| | | 0145 | |

**REASON FOR RELEASE**
- 849 B (1) PC
- 849 B (1) PC

IF 849 B (1) CHECK ONE OF FOLLOWING:
- COMPL. REFUSES TO PROSECUTE
- ARRESTEE EXONERATED
- FURTHER INVESTIGATION
- ADMISS. EVID. INSUFF.
- ASCERT. EVID. INSUFF.
- RELEASED TO OTHER AGENCY:
- OTHER:

| BIRTHPLACE (CITY / STATE) | PROB. INV. UNIT | JUV. DETAINED AT | AQ. CHGZ |
|---|---|---|---|
| CHICAGO IL | 01 | | N |

| DIVISION AND | DETAIL ARRESTING | DATE ARRESTED | TIME ARR. | TIME BKD. |
|---|---|---|---|---|
| 4201 | FB | 021787 | 1920 | 2231 |

| LOCATION OF ARREST | | |
|---|---|---|
| 450 S MAIN ST | | |

BAIL 5000.00
TOTAL BAIL 5000.00

**REMARKS:**

| TYP | CHARGE & CODE | DEFINITION | WARRANT NO. |
|---|---|---|---|
| F | 211PC | ROBBERY | |

## B. PROSECUTION

| DATE | | REASON FOR REJECTION |
|---|---|---|
| | 849.5 PC | CHARGE 1 / CHARGE 2 / CHARGE 3 / CHARGE 4 |

## C. COURT INFORMATION

| DATE FILED | FILE NO. | CONSOLIDATED FILE NO. | L.C. JUD. DIST. NO. |
|---|---|---|---|
| 2-6-90 | A796849 | | 1946 |

TYPE OF FILING: INFORMATION / CERTIFICATION / INDICTMENT

S.C. DIST. NO. 19700

| TYPE FILING | FIRST PLEA | FINAL PLEA | DISPOSITION | DATE | TYPE DISPN | CHARGES AT DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| F M | NG NGI G NOLO ACQ DIS CRT JUV HTA CRT JC CONV | | | | F M | SECTION AND CODE | DEG | PRI |
| 1 | | | | N 5730Y | 211/211.5 PC Robbery | | |
| 2 | | | | | (R) | | |
| 3 | | | | | | | |

| DATE OF SENTENCE | TRUE NAME | TYPE OF TRIAL: JURY / COURT / TRANSCRIPT |
|---|---|---|
| | | FINDING / VERDICT OF NOT GUILTY - INSANE |

| SENTENCE | CHARGE 1 | SUS | CHARGE 2 | SUS | CHARGE 3 | SUS | CHARGE 4 | |
|---|---|---|---|---|---|---|---|---|
| CYA | | | | | | | | |
| JAIL | | | | | | | | |
| FINE | | | | | | | | |
| RESTITUTION | | | | | | | | |
| OTHER | | | | | | | | |
| PROBATION | :17 PC | | :17 PC | | :17 PC | | :17 PC | |
| PRISON | SUS | | | | | | | |
| NOTES: | | | | | | | | |
| REMARKS | | | | | | | | |

## D. PROCEEDINGS SUSPENDED

DATE
- 3W
- APPEAL
- 1000 PC
- CRC 3050 WIC
- CRC 3051 WIC
- NON-STAT DIVERSION
- 1203.03 PC
- MISTRIAL
- OTHER
- 1170 PC
- 1025 PC
- MOSO
- ST. HOSP.
- SD. MENTAL

## E. REOPEN OR RETRIAL AFTER

DATE
- 3W
- APPEAL
- 1000 PC
- CRC
- 1170 PC
- NON-STAT DIVERSION
- 1203.03 PC
- MISTRIAL
- HUNG JURY
- 1170 PC
- 1025 PC
- MOSO
- CYA
- JUV COURT
- LOWER COURT
- OTHER

## F. SUBSEQUENT

DATE
PROBATION
- VIOLATED
- 1203.9 PC
- MODIFIED TO
- REVOKED
- 1203.2 PC
- MOS
- REINSTATED
- EXPIRED
- DS JAIL
- FINE

**43**